IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| S.H., et al., | * |
|     *Plaintiffs*, | * |
|     v. | *    No. 1:23-cv-01463 |
| | * |
| UNIVERSITY OF MARYLAND BALTIMORE COUNTY, | * |
|     *Defendant*. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**ANSWER**

Defendant University of Maryland Baltimore County, by its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 8(b), answers the Complaint and states as follows:

1. Paragraph 1 contains legal conclusions, not factual averments to which a response is required. If a response is required, the allegations in paragraph 1 are denied.

2. The University admits that Chad G. Cradock was the Head Coach of the UMBC Swim Team for a period of time and was assisted by team administrators, employees, and athletic staff, and that Plaintiffs are or were student-athletes and members of the UMBC Swim Team. The contention that Cradock engaged in persistent acts of sexual abuse, harassment, and discrimination against all Plaintiffs is a legal conclusion, not a factual averment to which a response is required. To the extent a response is required, the allegation is denied. The University denies that it was deliberately indifferent to any alleged sexual abuse, harassment, or discrimination by Cradock and denies that its response to any reports of misconduct was clearly unreasonable or deliberately indifferent. To the contrary, when reports of misconduct surfaced, the University removed Cradock from campus and, at great expense, engaged an outside law firm to conduct a thorough

investigation of such reports. The University also provided extensive supportive services to all UMBC Swim Team members, including Plaintiffs.

3. Denied.

4. Denied.

5. The University admits that it started investigating reports of misconduct by Cradock in late 2020 and issued a No Contact Instruction & Campus Restriction to Cradock on November 24, 2020. It denies the remaining allegations in paragraph 5.

6. Denied.

7. Paragraph 7 contains legal conclusions, not factual averments to which a response is required.

8. The University admits that it is a public senior higher education institution located in Baltimore County, Maryland and operating under the jurisdiction of the University System of Maryland Board of Regents. The assertion that the Court has personal jurisdiction over the University is a legal conclusion, not factual averment to which a response is required.

9. Paragraph 9 contains legal conclusions, not factual averments to which a response is required. If a response is required, the allegations in paragraph 9 are denied.

10. Paragraph 10 contains legal conclusions, not factual averments to which a response is required.

11. Admitted.

12. The University lacks knowledge or information sufficient to form a belief regarding whether K.W. is a current Maryland resident. It admits that K.W. was a member of the UMBC Swim Team in 2017 through 2022, but notes that K.W. earned his bachelor's degree in 2021 and his master's degree in 2023.

13. The University lacks knowledge or information sufficient to form a belief regarding whether R.B. is a current Maryland resident. The remaining allegations in paragraph 13 of the complaint are admitted except that the University notes that R.B. transferred prior to earning his degree.

14. The University lacks knowledge or information sufficient to form a belief regarding whether M.W. is a current Pennsylvania resident. The remaining allegations in paragraph 14 of the complaint are admitted.

15. The University lacks knowledge or information sufficient to form a belief regarding whether A.F. is a current Maryland resident. It admits that A.F. was a swimmer on the UMBC Swim Team from 2017 to 2022, but notes that A.F. earned her master's degree in 2022 and her bachelor's degree prior to 2022.

16. The University lacks knowledge or information sufficient to form a belief regarding whether V.E. is a current Maryland resident. The remaining allegations in paragraph 16 of the complaint are admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. The University admits that it retained Saul Ewing LLP to investigate student complaints of Title IX violations by Cradock, and that Saul Ewing issued reports regarding its investigation. The University denies the suggestion that the investigation was limited in scope. Rather, the investigation appropriately addressed the students' complaints.

22. Denied.

23. The allegations in paragraph 23 of the complaint are denied. The University admits that some swimmers reported that Cradock made inappropriate comments that made them uncomfortable, but there was no evidence that swimmers were subjected to a torrent of unrelenting sexual commentary while at UMBC, and investigators did not find by a preponderance of evidence that such comments created a hostile environment or otherwise constituted sexual harassment. The investigators also did not find a pattern of quid pro quo behavior.

24. The allegations in paragraph 24 are denied as framed. The University admits that some swimmers claimed that Cradock commented on swimmers' bodies and appearance, but there was no evidence that swimmers were subjected to a torrent of unrelenting sexual commentary while at UMBC, and investigators did not find by a preponderance of evidence that such comments created a hostile environment or otherwise constituted sexual harassment.

25. The allegations in paragraph 25 of the complaint are denied as framed. The University admits that some swimmers claimed that Cradock made inappropriate comments that made them uncomfortable, but investigators did not find by a preponderance of evidence that such comments created a hostile environment or otherwise constituted sexual harassment. The University also admits that some swimmers reported instances of unwanted touching by Cradock, but the University denies that Cradock committed any sexual misconduct or sexual harassment within clear view of any UMBC administrative, employee, or athletic staff.

26. The University lacks knowledge or information sufficient to form a belief regarding whether Cradock ever followed a swimmer into the locker room to observe his genitals, or ever demanded to see a swimmer's genitals, and therefore, denies the same. If such conduct occurred, however, it denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

27. The allegations in paragraph 27 of the complaint are denied as framed. The University admits that some swimmers claimed that Cradock made inappropriate comments that made them uncomfortable, but investigators did not find by a preponderance of evidence that such comments created a hostile environment or otherwise constituted sexual harassment.

28. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 28 of the complaint, and therefore, denies the same. If such conduct occurred, however, it denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

29. The University admits that some swimmers claimed that Cradock engaged in unsolicited and inappropriate physical contact with certain swimmers, but it lacks knowledge or information sufficient to form a belief regarding the truth of the specific allegations in paragraph 29 of the complaint, and therefore, denies the same. If true, the University denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

30. The University admits that some swimmers claimed that Cradock engaged in unsolicited and inappropriate physical contact with certain swimmers, but it lacks knowledge or information sufficient to form a belief regarding the truth of the specific allegations in paragraph 30 of the complaint, and therefore, denies the same. If true, the University denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

31. The University admits that some swimmers claimed that Cradock engaged in unsolicited and inappropriate physical contact with certain swimmers, but it lacks knowledge or information sufficient to form a belief regarding the truth of the specific allegations in paragraph 31 of the complaint, and therefore, denies the same. If true, the University denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

32. The University admits that some swimmers claimed that Cradock engaged in unsolicited and inappropriate physical contact with certain swimmers, but it lacks knowledge or information sufficient to form a belief regarding the truth of the specific allegations in paragraph 32 of the complaint, and therefore, denies the same. If true, the University denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. The University lacks knowledge or information sufficient to form a belief regarding whether Cradock favored or disfavored certain swimmers for illegitimate reasons, and therefore, denies the same. If such conduct occurred, however, it denies that the conduct was clear or that any UMBC employee with authority to institute corrective action knew about such conduct.

44. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 44 of the complaint, and therefore, denies the same. If such conduct occurred, however, it denies that any UMBC employee other than Cradock participated in or had advance notice of such conduct.

45. The University admits that S.H. and K.W. claimed that Cradock engaged in unsolicited and inappropriate physical contact with them, but it lacks knowledge or information sufficient to form a belief regarding the truth of their claims, and therefore, denies the same. The University also lacks knowledge or information sufficient to form a belief regarding whether Cradock engaged in such conduct with R.B., and therefore, denies the same. It notes that R.B. did not respond to multiple outreach to participate in the investigation of Cradock.

46. The University admits that S.H. and K.W. claimed that Cradock engaged in unsolicited and inappropriate physical contact with them and other male swimmers, but it lacks knowledge or information sufficient to form a belief regarding the truth of their claims, and therefore, denies the same. The University also lacks knowledge or information sufficient to form a belief regarding whether Cradock engaged in such conduct with R.B., and therefore, denies the same. It notes that R.B. did not respond to multiple outreach to participate in the investigation of Cradock.

47. The University admits that S.H. claimed that Cradock engaged in the conduct described in paragraph 47 of the complaint, but it lacks knowledge or information sufficient to form a belief regarding the truth of such claim, and therefore, denies the same.

48. Denied.

49. Denied.

50. The University admits that K.W. claimed that Cradock engaged in the conduct described in paragraph 50 of the complaint, but it lacks knowledge or information sufficient to form a belief regarding the truth of such claim, and therefore, denies the same.

51. The University admits that K.W. claimed that Cradock engaged in the conduct described in paragraph 51 of the complaint, but it lacks knowledge or information sufficient to form a belief regarding the truth of such claim.

52. The University admits that it started investigating reports of misconduct by Cradock in late 2020 and issued a No Contact Instruction & Campus Restriction to Cradock on November 24, 2020. It admits that Cradock violated the no contact order by texting K.W.

53. The University admits that it issued a No Contact Instruction & Campus Restriction to Cradock on November 24, 2020 and that Cradock violated the no contact order by texting K.W.

54. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 54 of the complaint, and therefore, denies the same. It notes, however, that R.B. did not respond to multiple outreach to participate in the investigation of Cradock.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 64 of the complaint, and therefore, denies the same.

65. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 65 of the complaint, and therefore, denies the same.

66. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 66 of the complaint, and therefore, denies the same.

67. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 67 of the complaint, and therefore, denies the same.

68. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 68 of the complaint, and therefore, denies the same.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. The University lacks knowledge or information sufficient to form a belief regarding whether A.F. witnessed harassment and assault of her teammates, and therefore, denies the same. If true, the University denies that A.F. could not do anything to stop it.

78. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 78 of the complaint, and therefore, denies the same.

79. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 79 of the complaint, and therefore, denies the same.

80. Denied.

81. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 81 of the complaint, and therefore, denies the same.

82. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 82 of the complaint, and therefore, denies the same.

83. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 83 of the complaint, and therefore, denies the same.

84. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 84 of the complaint, and therefore, denies the same.

85. The University admits that, in 2018, V.E. made a report to Cradock about stalking by a swim team member whom she formerly had dated, but denies that it covered up the report. Rather, Cradock forwarded the report to the University's Title IX Office, but when the Title IX Coordinator reached out to V.E. for more details, V.E. did not respond. V.E. did not pursue a Title IX complaint against the alleged stalker until much later, in the Fall of 2020. At that time, the University conducted and completed a thorough investigation.

86. Denied.

87. Denied.

88. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 88 of the complaint, and therefore, denies the same.

89. Denied.

90. The University lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in paragraph 90 of the complaint, and therefore, denies the same.

91. The University denies that M.W. was deprived of educational opportunities at UMBC but it lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 91 of the complaint, and therefore, denies the same.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. The University denies this allegation as framed, but admits that, prior to the disclosure of misconduct in 2020, Attorney Bobbie Hoye was aware of only one vague and anonymous report regarding Cradock, made in 2019, but the complaining student did not follow up with the Title IX Office.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied

110. The University admits that athletic staff and students made reports of Title IX violations by Cradock to UMBC's Title IX Coordinator and that the University responded by issuing No Contact Instructions and Campus Restrictions to Cradock but it denies the suggestion that the University's response was delayed in any way.

111. Admitted.

112. Admitted.

113. Admitted.

114. The University denies the allegations in paragraph 114 of the complaint, and specifically denies that it was deliberately indifferent towards Plaintiffs.

## COUNT I
**(Discrimination on the Basis of Sex in Violation of Title IX by Female Plaintiffs)[1]**

115. The University incorporates by reference the above paragraphs.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

---

[1] Although this Count is titled as being on behalf of all Plaintiffs, it includes allegations only by the Female Plaintiffs.

## COUNT II
**(Sexual Harassment in Violation of Title IX by Male Plaintiffs)**

123. The University incorporates by reference the above paragraphs.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

## COUNT III
**(Deliberate Indifference to Harassment in Violation of Title IX by All Plaintiffs)**

130. The University incorporates by reference the above paragraphs.

131. Admitted.

132. Admitted.

133. As framed, this allegation makes no sense, so the University denies it.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Denied.

139. Paragraph 139 contains legal conclusions, not factual averments to which a response is required.  If a response is required, the allegations in paragraph 139 are denied.

140. Paragraph 140 contains legal conclusions, not factual averments to which a response is required.  If a response is required, the allegations in paragraph 140 are denied.

141. Denied.

## COUNT IV
### (Breach of Contract by all Plaintiffs)

142. Paragraphs 142 through 153 set forth allegations regarding Plaintiffs' breach of contract claim (Count IV). As the Court has dismissed Count IV, no response to these paragraphs is required.

### FIRST AFFIRMATIVE DEFENSE

The amended complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

The University is not liable for any wrongdoing by Cradock because no official with authority to institute corrective action had actual knowledge of such wrongdoing. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998).

### FOURTH AFFIRMATIVE DEFENSE

Cradock's knowledge cannot be imputed to the University because he was the wrongdoer, not an appropriate person with the authority to take corrective action. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998).

### FIFTH AFFIRMATIVE DEFENSE

The University's response to reports of sexual harassment or discrimination was not clearly unreasonable.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs have not sustained damages recoverable under Title IX, which includes no express private right of action and which was enacted under Congress's Spending Clause powers. *See Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562 (2022).

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs may not recover punitive damages under Title IX, which includes no express private right of action and which was enacted under Congress's Spending Clause powers. *See Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562 (2022).

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ann M. Sheridan

_____
ANN M. SHERIDAN
Federal Bar No. 11137
LILLIAN L. REYNOLDS
Federal Bar No. 30225
Assistant Attorneys General

Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland 21202
asheridan@oag.state.md.us
(410) 576-6559
(410) 576-6437 (facsimile)

August 29, 2023                           Attorneys for Defendant